UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEAVER COUNTY EMPLOYERS RETIREMENT FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TILE SHOP HOLDINGS, INC., et al.,<br><br>Defendants. | Case Nos.  16-mc-80062-JSC<br>　　　　　　  16-mc-80076 JSC<br><br>**ORDER RE: GOTHAM CITY RESEARCH LLC'S COMPLIANCE WITH SUBPOENAS**<br><br>Re: Dkt. No. 1 |

The present discovery dispute arises out of a putative securities class action pending in the United States District Court for the District of Minnesota. *See Beaver County Employers Retirement Fund v. Tile Shop Holdings, Inc.*, No. 14-cv-786-ADM-TNL (D. Minn.). Plaintiffs initiated the lawsuit following the publication of a negative report about defendant Tile Shop Holdings, Inc. ("Tile Shop") by Gotham City Research, LLC ("Gotham"), an investor who shorted Tile Shop stock. Both Plaintiffs and Defendants served third-party subpoenas on Gotham seeking documents and depositions. When Gotham failed to comply with the subpoenas, the parties filed separate actions to compel Gotham's compliance. *See Beaver County Employers Retirement Fund v. Tile Shop Holdings, Inc.*, No. 16-80062 (Plaintiffs' action); *Beaver County Employers Retirement Fund v. Tile Shop Holdings, Inc.*, No. 16-80076 (Defendants' action). The actions have been related and Gotham filed a joint opposition to the parties' separate motions to compel. Gotham objects to both subpoenas as shielded from production by the journalist privilege, seeking trade secrets, and as an undue burden.

The pending motions ask the Court to decide whether the federal qualified journalist privilege applies to an investor whose publications are limited to negative reports about the companies in which the investor has taken a short position. Having considered the parties' written submissions and having had the benefit of oral argument on June 2, 2016, the Court finds that the

privilege does not apply to Gotham on the record presented here. The Court thus GRANTS Plaintiffs' motion in part, but DENIES Defendants' motion because notwithstanding Gotham's unsuccessful privilege assertion, Defendants have not shown the relevance of the information they seek.

**BACKGROUND**

Tile Shop is a specialty retailer of manufactured and natural stone tiles and related accessories. (No. 16-80062, Dkt. No. 2-5 at ¶ 2.) In November 2013, Gotham, a company which "focuses on due diligence-based investing," published a report on its website regarding the Tile Shop entitled: "Tile Shop: Like Crazy Eddie's, but with an Undisclosed Related Party & a Chinese Twist." (No. 16-80062, Dkt. No. 2-3.) The Report disclosed that Tile Shop employee Fumitake Nishi owned Beijing Pingxiu ("BP"), Tile Shop's largest supplier, and that Nishi was the brother-in-law of Tile Shop CEO Robert Rucker. (*Id.* at 9, 13, 16. [1]) The Report suggested that Tile Shop had not disclosed these relationships and that BP may only exist as a "phantom company" to allow Tile Shop to engage in accounting manipulations and overstatement of earnings. (*Id*. at 9, 17.) Gotham had taken a short position in Tile Shop stock prior to issuance of the Report. (*Id.* Dkt. No. 11-2 at ¶ 28.)

In the aftermath of Gotham's report, Tile Shop stock price dropped by 39%. (*Id.,* Dkt. No. 2-5 at ¶ 7.) Tile Shop thereafter launched an internal investigation which concluded that the alleged relationships revealed in the Report were accurate, but that CEO Rucker did not have knowledge of his brother-in-law's involvement in BP. (*Id*.)

Plaintiffs' putative class action lawsuit, filed shortly after the stock drop, alleges that Tile Shop failed to disclose "several material, related-party relationships." (*Id*. at ¶ 4.) In particular, Plaintiffs allege that Tile Shop failed to disclose the relationship between Rucker and Nishi, the relationship between Nishi and BP, and Nishi's relationship with two other Tile Shop suppliers. Plaintiffs allege that Rucker and other Tile Shop executives either knew or should have known of Nishi's relationship with BP and these other suppliers. (*Id*. at ¶ 8.) Plaintiffs contend that Tile

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Shop's failure to disclose these relationships violated various securities laws as did the misleading and false statements Tile Shop made in its financial statements. (*Id*. at ¶¶ 99-158.)

Discovery is ongoing in the underlying action. Of relevance here, Plaintiffs propounded document and deposition subpoenas to Gotham seeking (a) documents and communications that identify all sources about the Rucker/Nishi relationship "including but not limited to" persons who supplied the information; (b) names of former Tile Shop employees referred to in the Gotham report; (c) documents and communications regarding the Report's statement that ex-employees say that Nishi and Rucker are related; and (d) all documents concerning the nature, scope and/or extent of BP's relationship with the Tile Shop, Nishi and/or Rucker, including any documents obtained concerning such matters in connection with preparing the Gotham Report. (No. 16-80062, Dkt. No. 2-1 at 9-10; Dkt. No. 2-2 at 6.) At oral argument, and with the Court's encouragement, Plaintiffs' narrowed their request to the identity of Gotham's sources regarding Nishi's involvement with BP. Defendants, for their part, seek a wider-range of information, including Gotham's Tile Shop trading reports. (No. 16-80076, Dkt. No. 2-5 at 11; Dkt. No. 2-6 at 28.) Gotham objects to both subpoenas.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b) allows a party to obtain discovery concerning any nonprivileged matter that is relevant to any party's claim or defense provided that it is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Parties may seek discovery within the scope of Rule 26(b) by deposing a witness pursuant to Rule 30 or serving requests for production of documents pursuant to Rule 34.

Rule 45, in turn, governs discovery of nonparties by subpoena. The scope of discovery under Rule 45 is the same as under Rule 26(b). Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970)); Fed. R. Civ. P. 34(a). A court *must* quash or modify a subpoena that requires disclosure of privileged or other protected matter if no exception or waiver applies or that subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iii)(iv). A court *may* quash or modify a subpoena

which would disclose a "trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B).

Generally, "[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Optimize Tech. Solutions, LLC v. Staples*, Inc., No. 14-MC-80095, 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014).

## DISCUSSION

Gotham objects to both subpoenas on the same grounds: (1) that the information sought is protected by the journalist privilege, (2) that responding to the subpoenas would require Gotham to divulge trade secret confidential business and operational information, and (3) that the subpoenas impose an undue burden.

### I. Plaintiffs' Motion to Compel

#### A. Identification of Gotham's Sources

Plaintiffs seek the identity of Gotham's sources about Nishi's involvement with BP given that Rucker denies knowing his brother-in-law owned and operated BP. They contend that these potential witnesses are relevant to establish scienter. "[I]f employees or business partners were aware of Nishi's ownership and operation of BP, Tile Shop executives—including Nishi's brother-in-law, CEO Robert Rucker . . . were also likely aware." (Dkt. No. 1 at 2.)

##### 1) The Journalist Privilege

"[W]hen facts acquired by a journalist in the course of gathering the news become the target of discovery, a qualified privilege against compelled disclosure comes into play." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) ("*Shoen I*"). "Rooted in the First Amendment, the privilege is a recognition that society's interest in protecting the integrity of the newsgathering process, and in ensuring the free flow of information to the public, is an interest of sufficient social importance to justify some incidental sacrifice of sources of facts needed in the administration of justice." *Id.* (internal quotation marks and citation omitted). A person may invoke the journalist's privilege if the person had "the intent to use material—sought, gathered or received—to disseminate information to the public and such intent existed at the inception of the newsgathering

4

process." *Id*. at 1293. Gotham bears the burden of showing that it may assert the privilege. *Id*. at 1296.

Plaintiffs contend that Gotham does not qualify for the journalist privilege because it only publishes reports about companies in which it has taken a financial position prior to publication. The Court agrees. Gotham chooses which reports to publish based on its own trading needs. Daniel Yu, Gotham's "founder, publisher, and editor," declares that if through its research it finds that "a company's reported financial information or business information is materially misleading, then Gotham takes a short position in the company's stock before issuing its report." (Dkt. No. 11-2 ¶ 6.) Thus, its decision to publish is based on its needs; specifically, whether it has decided to take a short position in the target of its investigation, and not on whether the report is newsworthy. Newsworthiness and its needs may overlap, but the primary motivation for Gotham's publication is to disseminate the negative information so that it can profit on its short position.

The Court therefore finds that Gotham does not have the intent at the inception of its newsgathering process "to use material—sought, gathered or received—to disseminate information to the public." *Shoen I,* 5 F.3d at 1293. Instead, the Court finds that Gotham's intent, as attested to by Mr. Yu, is to disseminate the information to the public only if "a company's reported financial information or business information is materially misleading" and Gotham has taken a short position in the company. (No. 16-80062, Dkt. No. 11-2 ¶ 6.) Mr. Yu's assertion that "[w]henever Gotham gathers information about a company, it is [Gotham's] intent to publish that information to the public" and that "Gotham has published the results of its findings about all the companies it investigated" (*id.* at ¶¶ 2, 5), does not persuade the Court otherwise. Mr. Yu does not dispute that Gotham had taken a short position in all of the companies on which it published reports. Indeed, Gotham's website advises the reader to "assume that as of the publication date of the reports found on this website, GOTHAM CITY RESEARCH LLC stands to profit in the event the issuer's stock declines." *See* https://gothamcityresearch.com/ (last visited May 31, 2016). Gotham's Tile City Report also makes the same disclosure. (No. 16-80062, Dkt. No. 2-3 at 3.) And Mr. Yu does not attest that if the information Gotham gathered about a company is otherwise newsworthy, although not revealing materially misleading financial information, Gotham will still

5

publish a report. Nor does he attest that if for whatever reason Gotham is unable to take a short position in a company it will still publish a report. The Court therefore finds that Gotham has not and would not publish a report about a company in which it does not have a financial interest. On this record, the journalist privilege does not apply.

The circumstances here are similar to *In re Fitch*, *Inc*., 330 F.3d 104 (2d Cir. 2003). There, the Second Circuit held that Fitch, a company in the business of analyzing and rating securities and debt offerings, could not invoke the journalist privilege. Fitch argued "that it conducts research, fact-gathering, and analytical activity that is directed towards matters of general public concern, just like any journalist," and that it makes its information available to the public for free on its website. *Id.* at 109. The court held, however, that Fitch only writes about its own clients—the issuers who pay Fitch a fee—and that this fact weighed against treating Fitch like a journalist. The court reasoned that "Fitch's information-disseminating activity does not seem to be based on a judgment about newsworthiness, but rather on client needs." *Id.* The same is true for Gotham. Gotham's information-disseminating activity is not based on a judgment about newsworthiness, but rather on its own financial needs and whether it can make a profit by shorting the company on which it publishes its report. This motivation is substantively no different from Fitch only publishing reports on clients who pay it to analyze their issues and thus weighs against a finding that the privilege applies.

The *Fitch* court was also persuaded by Fitch's role in structuring the transactions which it was rating. *Id.* at 110-11. Although not explicitly stated by the court, the concern seemed to be that Fitch was therefore not independent of the companies it was rating. Gotham's short position in the companies on which it publishes reports raises the same concern. Given its financial interest in the share price of the companies on which it reports, Gotham is not independent; indeed, Gotham makes that explicit in the reports and on its website. The Court is not suggesting that the journalist privilege automatically does not apply to anyone who has a financial interest in the subject of the publication at issue; rather, under the circumstances here, where Gotham only publishes reports on companies in which it has first taken a short position, it is not entitled to shield relevant information from discovery.

6

*In re Pan Am Corp.,* 161 B.R. 577 (S.D.N.Y 1993), a case involving whether the S & P, a ratings agency, could assert the journalist privilege, is distinguishable. There, the court found that the record did not support a finding "that economic factors predominate [the S & P's] rating activities" because the S & P did not limit its ratings to companies who paid it a fee; instead, the S & P rated all stock issues and debt financings regardless of whether the issuer requested the ratings or paid a fee. *Id.* at 583; *see also Fitch,* 330 F.3d at 109 (distinguishing *Pan Am* on the grounds that the S & P, unlike Fitch, rated all stock issues). Not so here. Gotham only publishes reports on companies in which it has taken a short position.

That Gotham itself takes the short position, rather than being paid by an investor who takes the short position, is a difference without a distinction. In both circumstances the judgment on whether to publish is not based on newsworthiness, but rather on whether the publication is likely to affect the stock price of the report's target.

\*   \*   \*

On the record before the Court Gotham has not met its burden of showing that the qualified journalist privilege applies.

**(2) Compelling Need**

Even if the journalist privilege applied, it is only a qualified privilege. The privilege can be overcome if the requesting party can demonstrate a sufficiently compelling need for the journalist's materials. *Shoen I*, 5 F.3d at 1296. "[A] civil litigant is entitled to requested discovery notwithstanding a valid assertion of the journalist's privilege by a nonparty only upon a showing that the requested material is: (1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case." *Shoen v. Shoen*, 48 F.3d 412, 416 (9th Cir. 1995) ("*Shoen II* ").

Plaintiffs contend they have exhausted all reasonable alternative sources and that Gotham's identification of its sources regarding Nishi's relationship to BP is critical to establishing scienter. There is no question that the information sought—the identity of potential witnesses—is relevant. Whether Plaintiffs have a compelling need for this information hinges on whether Plaintiffs have attempted to obtain this information from other sources and whether it is cumulative.

Gotham suggests that Plaintiffs must depose all the ex-employees who worked during the time period in question, Rucker, his wife, other family members, board members and Tile Shop executives, business associates and anyone else who might have known, but this is plainly not required by *Shoen*. Gotham's reliance on *Goldberg v. Amgen*, 123 F.Supp.3d 9 (D. D.C. 2015), is unavailing. There, the court emphasized that "this is not the kind of case where the possible alternative sources are indefinite in number or so ill-defined as to make it utterly unreasonable to expect a party to meet the exhaustion requirement," but there were a discrete list of 25 or 26 individuals who might have the information sought. *Id*. at 18. Here, in contrast, the universe of individuals with potentially relevant information is much broader because as of the time of the Gotham report Tile Shop had 1,214 employees and countless business partners. Discovery closes in less than a month, and Plaintiffs have already taken several depositions, including of Rucker. They have a need for the names of other witnesses with potentially relevant information.

On the question of cumulativeness, Gotham notes that Plaintiffs' complaint alleges that they already have ex-employee sources who have confirmed that "Rucker and other Tile Shop executives knew or reasonably should have known about the involvement of Rucker's family members—particularly Nishi—in operating BP and supplying product to the Company." (No. 16-80062, Dkt. No. 2-5 at ¶ 36.) But that allegation is not the same as alleging possession of dispositive, undisputed evidence that Rucker knew of Nishi's involvement with BP. The identity of the potential witnesses is not cumulative.

In sum, even if the Court were to find that the journalist privilege applied, Plaintiffs have a sufficiently compelling need for the identities of Gotham's sources for its report about Nishi's involvement with BP.

### 3) Trade Secret Protection

Gotham also complains that its sources are a protected trade secret. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir.1992) (quotations and citations omitted). Gotham has not shown that the information sought here—the specific sources for its report about Nishi's relationship to BP—is a protected trade secret. In any event, as stated at oral argument, the Court is ordering that the information be disclosed pursuant to an attorneys'

eyes only protective order, and the parties are directed to the Northern District of California's model protective orders. Such protections alleviate any trade secret concerns. The protections are also appropriate because *how* Plaintiffs obtained the names of potential witnesses—that is, that they received the information from Gotham—is irrelevant. What is relevant is what the potential witnesses say about Nishi, BP and Tile Shop. Plaintiffs cannot know what they say until Plaintiffs know who they are.

### 4) Undue Burden

The relief the Court is ordering—Gotham's identification of its sources for its assertion regarding Nishi's involvement with BP—does not place an undue burden on Gotham. While Gotham could produce this information by deposition, it could also agree with Plaintiffs to produce it in another less burdensome format and the parties are ordered to meet and confer and agree by Friday, June 10, 2016 on the method and timing of the production of the information.

## II. Defendants' Motion to Compel

Defendants propounded a broad subpoena seeking documents and a deposition. Defendants seek all documents relating to Gotham's Report, all documents relating to Tile Shop, Rucker, and several other identified individuals, all of Gotham's communications with Plaintiffs, Plaintiffs' counsel and several others, and all trading records related to Tile Shop.[2] (No. 16-80076, Dkt. No. 2-5 at 16-34.) Gotham asserts that it is not withholding any responsive documents other than its trading records, but it refuses to produce those records or sit for a deposition.

The Court declines to compel compliance with Defendants' subpoenas because they seek irrelevant information. Defendants contend that Gotham intentionally misrepresented the facts in its Report to drive down the Tile Shop share price and profit from its short position. They argue:

> If the Tile Shop Defendants can demonstrate that the Gotham Report was an untrue, unfounded attempt to manipulate the market, it can rebut plaintiffs' claimed damages and causation in the Minnesota action. The Tile Shop Defendants believe that the stock-

---

[2] Defendants also seek deposition testimony regarding these and other topics including any posts Gotham has made on any public websites relating to investing, the basis for Gotham's invocation of the journalist privilege, and any public or non-public statements Gotham may have made regarding the Tile Shop or anyone affiliated with the Tile Shop. (No. 16-80076, Dkt. No. 2-6 at 28-32.)

> price drop that plaintiffs rely upon for their damages was caused by something other than dissemination of relevant, true facts uncovering a fraud; instead, it was really a reaction to the false information and speculations included in the Gotham Report. This evidence would refute plaintiffs' damages theory.

(Dkt. No. 16 at 3:11-16.) But Defendants do not require information from Gotham to prove that the statements in the Report were wrong; Defendants possess that information. For example, Defendants contend that the Report inaccurately stated that Tile Shop's fraud would require Tile Shop to restate several years' historical results. (*Id.* at 3:1-2.) Defendants themselves possess all the information needed to disprove that assertion.

Gotham's Tile Shop trading reports are likewise irrelevant. Defendants insist they need the trading reports to show Gotham's financial interest in Tile Shop's share decline and thus assail Gotham's credibility. But Gotham's credibility is not at issue; Defendants' credibility and the alleged falsity of its statements to the market is what is at issue. To the extent they need evidence of Gotham's financial interest as case background, Plaintiffs' motion to compel asserts that fact as a given; thus, the parties should have no difficulty stipulating to that fact. And, in any event, Gotham has now submitted a declaration in which it states that it takes a short position in a company before it publishes its reports. The specific amount of profit Gotham made from its trades is not at issue in the securities fraud action. Accordingly, Tile Shop's motion to compel is denied.

## CONCLUSION

The federal common law journalist privilege does not apply to Gotham. Accordingly, Gotham must identify its sources (that is, the potential witnesses) of its report regarding Nishi's involvement with BP. Plaintiffs and Gotham shall meet and confer and agree by Friday, June 10, 2016 on the timing and method of Gotham's disclosure. Although the privilege does not apply, Defendants have not met their burden of showing that the information they seek is relevant to the issues in the underlying securities fraud action. Accordingly, Defendants' motion to compel is denied.

**IT IS SO ORDERED.**

Dated: June 7, 2016

JACQUELINE SCOTT CORLEY
United States Magistrate Judge